UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| DE'QUA TURNER, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-CV-0092 NCC |
| | ) |
| SECURUS TECHNOLOGIES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff De'Qua Turner, an inmate at the Cape Girardeau County Jail, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff states in his motion to proceed in forma pauperis that the Jail has refused to provide him with a copy of his inmate account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Complaint

Plaintiff, an inmate at the Cape Girardeau County Jail, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff asserts numerous claims under 42 U.S.C. § 1983, the Sherman Act, the Federal Communications Act, the Racketeering Influenced Corrupt Organizations Act, and Missouri state law against Securus Technologies, Inc. (a telecommunications company), Cape Girardeau County, Jackson, Missouri, Sheriff John Jordan and Captain James Mulcahy.[1] Plaintiff seeks monetary damages and injunctive relief.

Securus Technologies, Inc. allegedly provides telecommunications services to inmates in state prisons and county jails nationwide. Securus services the majority of state and local correctional facilities. The telecommunications company has allegedly established itself as a monopoly by offering "bribes" and "kickbacks"[2] to state and local governments. Since doing so, the company has also increased its rates and surcharges for inmate phone calls. Securus charges a tax and rates of "at least" $0.21 per minute for every out-of-state call. The company charges almost 10 times this amount for in-state phone calls.

---

[1] Plaintiff additionally lists five other defendants in the section marked "Parties" of his complaint. However he has not made specific allegations against the other individuals: Ruth Ann Dickerson (Captain of Business Operations at the Jail); David James (Captain); Ms. Rhea (Trust Fund Supervisor); Lieutenant Davis; and Sergeant Anthony Boliva.
[2] Plaintiff states that Securus calls these "kickbacks" site commissions.

Each facility charges different rates and taxes. At the Jail, he pays a $5.00 "intrastate connect fee" in addition to $0.61 per minute for in-state calls. A 15-minute call from the Jail costs 14.15. In contrast, an out-of-state call from the Jail costs $0.21 per minute, and no "interstate call fee" is charged. With local, state, and federal taxes, the total cost of a 15-minute telephone call is approximately $3.15.

Although Securus allows family members to set up prepaid accounts for inmates, the company charges a fee for doing so. Securus also allows only 20 telephone numbers for each account per inmate. Once the funds on prepaid accounts run out, a new activation fee is required.

Plaintiff alleges that he has been subject to these calling restrictions, costs, and taxes at different times since he has been detained at the Jail, since 2016. Sheriff Jordan and James Mulcahy were responsible for entering into a contract with Securus for calling services at the Jail. In exchange for the contract, they were allegedly given "kickbacks" and "site commissions," which consisted of a percentage of the profits on inmate phone calls. The funds were then used to pay for local ambulance services, employee pensions, and employee bonuses. To recoup this amount, Securus implemented the "tax" on outgoing inmate calls, hiked rates, and instituted per-call fees.

Sheriff Jordan and James Mulcahy purportedly informed plaintiff that he would be subject to the taxes on outgoing phone calls. He objects to them as excessive and as limiting his contact with family and friends.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's pro se Complaint into the following enumerated counts:

Count 1: Fourteenth Amendment due process and takings claims against defendants for overcharging plaintiff for phone services. Count 2: Miscellaneous federal claims against Defendants for allowing Securus to form a monopoly and overcharge inmates under the Federal Telecommunications Act, 47 U.S.C. §§ 201(b), 202, and 206, Racketeering Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961(5) and 1964(c), and Sherman Antitrust Act, 15 U.S.C. 1, et seq. Count 3: Miscellaneous Missouri state law claims against defendants for unjust enrichment, fraud, civil conspiracy and unspecified constitutional violations.

The complaint does not survive preliminary review. Prisoners are not entitled to use the telecommunications company of their choice, and plaintiff's objection to the use of Securus gives rise to no constitutional claim. Without any infringement on an inmate's constitutional rights, the courts generally will not interfere with the administration of a correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).[3]

With that said, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). Unreasonable restrictions on a prisoner's telephone access may violate the First and/or Fourteenth Amendment. *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991). But reasonable access to a telephone does not mean unlimited telephone use or use of a particular telephone provider at a particular rate.

---

[3] The very issues that plaintiff now raises were raised by prisoners in the Western District of Arkansas in three class actions, which were recently decertified and dismissed. *See Mojica v. Securus Technologies,* No. 5:14CV5258 (W.D. Ark.); *In Re Global Tel'Link Corp. ICS Lit.*, No. 5:14CV5275 (W.D. Ark); *Antoon v. Securus Tech.*, No. 5:17CV5008 (W.D.Ark). The cases were first certified after, in 2015, the Federal Communications Commission entered a Second Report and Order and Third Further Notice of Proposed Rulemaking In the Matter of Rates for Interstate Inmate Calling Services, 30FCC Rcd. 12763 (2015) ("Second Report and Order"), that imposed caps on the amounts that ICS providers could charge consumers in calling rates and ancillary fees. However, after the classes were certified, in the case of *Global Tel'Link v. FCC*, 866 F.3d 397 (D.C.Cir 2017), the United States Court of Appeals for the D.C. Circuit reversed and remanded the Second Report and Order in part on the grounds that site commissions are legitimate costs of business when they are a condition precedent to obtaining ICS contracts. Whether the district court erred in decertifying the class is now before the Eighth Circuit Court of Appeals. *See Mojica v. Securus,* No. 18-2622 (8th Cir.).

*Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989), *cert. denied*, 493 U.S. 895 (1989). Prison administrators are generally free to determine which telephone service to provide, subject to "court scrutiny for unreasonable restrictions." *Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir. 1994); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986).

The Seventh Circuit has already considered the claims that plaintiff now raises and concluded that they lack merit. *See Arsberry v. State of Illinois*, 244 F.3d 558 (7th Cir. 2001). In *Arsberry*, a group of Illinois inmates, their family members, and a public interest law firm challenged the practice at Illinois prisons and jails of granting one telephone company exclusive rights to provide inmate phone services in exchange for a percentage of revenues generated. *Id.* at 561. Plaintiffs maintained that the rates and taxes charged by the phone company were exorbitant. *Id.* They challenged the practice under § 1983, the Sherman Act, and state law. *Id.* The Court also considered the application of the Federal Communications Act to their claims. *Id.* The Seventh Circuit found no colorable claim for a constitutional violation under § 1983.

With regard to the Fourteenth Amendment equal protection claim, the Court determined that plaintiffs were not challenging a tax that was, in some way, discriminatory, but rather a tariffed phone rate. *Id.* at 565. Challenges to tariffed phone rates fall within the primary jurisdiction of the telephone regulators, not the district court. *Id.* As for any claim that the plaintiffs were deprived of a liberty interest associated with competition for inmate phone services or the right to make or receive prison visits with family, the Court found that the claim lacked "procedural dimension." *Id.* This is because the defendants did not deprive the inmates of a means to challenge the inmate telephone rates in the regulatory agencies. *Id.* The Court went on to find no substantive due process right. *Id.* at 566.

*Arsberry* also foreclosed relief based on telephone rates under the Takings Clause. *Id.* at 564-66. The Court acknowledged that a First Amendment right may be implicated in the context of phone conversations, but not as it relates the choice of carrier or related fees and taxes:

> It is true that communications the content of which is protected by the First Amendment are often made over the phone, but no one before these plaintiffs supposed the telephone excise tax an infringement of free speech.... Communications protected by the amendment are also frequently made by printing words on paper, yet no one supposes that the consequence is to bring the corporate income tax, when imposed on manufacturers of paper, within the purview of the First Amendment, or even to forbid taxing those manufacturers more heavily than manufacturers of products of communications media.

*Id.* at 564 (citations omitted). Further, the Court found no suggestion that the scheme was motivated by any desire to limit free speech. *Id.* As here, the plaintiffs in *Arsberry* contend that the scheme was instead motivated by "pure greed," and plaintiff has not even raised a First Amendment claim in the Complaint. *Id;see also, Holloway v. Magness* v. 666 F.3d 1076 (8th Cir. 2012).

The Sherman Act claim also failed. The Court pointed out that the claim requires a showing that the phone companies "worked together to divide the inmate phone market, using state officials as their cat's paws." *Id.* at 566 (citations omitted). The officials, not the phone companies, acted as principals in *Arsberry*. *Id.* The same is true in the instant case.

In fact, this case appears to be no different than *Arsberry*, and the Court finds that dismissal of Counts 1 and 2 is warranted at this time. Count 3 consists entirely of state law claims, and the Court declines to exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any state law claims, and these claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #3] is **DENIED AS MOOT**.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 27th day of August, 2018.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE